By the Court, Harris, J.
The judge at the circuit, very properly told the jury that the material question in the case was, “ whether Walker had power to sign the papers he gave to Bloss.” I think he might have gone farther and said that this was the only question for their decision. The principles of law applicable to that question were also well stated by the learned judge. He instructed the jury that, to justify them in finding such authority, it was not necessary that the plaintiffs should show an express power, but that it would be sufficient, if Walker had before done such acts, or occupied a position in the business of Hiles & Wheeler which usually entitles the incumbent to perform such acts. Having thus submitted to the jury the question of Walker’s authority, and the rules by which they were to be guided in the decision of that question, I think the judge should have instructed the jury to find their verdict for the plaintiff or defendant as they should determine that question. As I view the case there was no other question of fact which could properly have been submitted to the decision of the jury.
Assuming that Walker was authorized to sign the shipping bills, and it does not seem to have been questioned by Hiles & Wheeler themselves, at the time of the transaction, Hiles & Wheeler acknowleged by those bills that Mack was the shipper of the corn, and that they had received it from him, as carriers, to forward, on his account, from Buffalo to Hew-Tork, and there to deliver it to the plaintiffs as consignees, The plaintiffs were *78 thus clothed with prima facie evidence of ownership. This evidence might have been rebutted by showing that the corn had been consigned to the plaintiffs as the agents of Mack. Such proof would defeat an action by the plaintiffs against the carriers for injury to the property or for not delivering. But in the absence of such proof, the consignees alone could maintain an action against the carrier for a breach of his contract to deliver. Niles & Wheeler, therefore, when they executed the shipping bills, made themselves bailees, either of Mack, the shipper, or the plaintiffs, as consignees, according to the right of property, as between them. And, as between the latter, the plaintiffs, when they received the bills consigning the property to them, and accepted the drafts of the shipper upon the credit of the consignment, became factors del credere, and acquired an interest in the property which could not be defeated by Mack, or by Niles & Wheeler. The consignment, and the advances made upon the credit of the consignment, vested in the plaintiffs the right of property and the constructive possession also. Niles <fc Wheeler had, by their own act given to Mack “ the external indicia of the right of disposing of their property.” Mack acted fraudulently, it is true, but the plaintiffs are not implicated in his fraud. Acting upon the evidence, with which Niles & Wheeler had furnished Mack, of a right to dispose of the corn, they made their advances in good1- faith. When this was done Niles & Wheeler, though they had been imposed upon, lost their right of reclaiming their property. Their title, good as against Mack, was divested, as against the plaintiffs, who, to the extent of their advances, had become bona fide purchasers, from their fraudulent vendee. (Saltus v. Everett, 20 Wend. 267. Grove v. Brien, 8 How. U. S. R. 429. Gibson v. Stevens, Id. 384.)
It was insisted upon the trial, that the instruments signed and delivered by Walker to Mack, and upon which the plaintiffs rely as the evidence of their title, were not executed in such a manner as to make them shipping bills, or bills of lading, according to commercial usage. This seems to have been the opinion of the- learned judge who tried the cause. It is true, that, for the *79 purposes of revenue, every master of a boat conveying property on the canal is required to exhibit to certain collectors a bill of lading, signed by himselfj and by the consignor of the property. (1 R. S. 240, § 121.) But I do not understand that the signature of the master is necessary to give the bill of lading effect as a commercial instrument. The master of" the boat or vessel carrying the property is the agent of the owners. When he signs the bill of lading he signs it as their agent. It is their contract, not his. (3 Kent's Com. 207.) It would be a singular anomaly, indeed, if the signature of the agent should be re-' quisite to give validity to an instrument already signed by the principal. From the very nature of the business, the bill of lading must, in many instances, be signed by the master; but when the owner does sign the bill, he estops himself from denying its validity. If, then, the signature of Walker is to be regarded as” the signature of Miles & Wheeler, the bills were executed in such a manner as to vest in the plaintiffs the right of property as the consignees of the corn.
The evidence offered by the defendants to show that the bills of lading were fraudulently obtained by Mack, was objected to by the plaintiffs’ counsel, and the objection was overruled. I think the testimony ought not to have been received. The plaintiffs had shown themselves bona fide purchasers of the corn, to the extent of their advances. The defendants, when offering evidence to show the fraud of Mack, did not propose to connect the plaintiffs with that fraud. And yet, unless the good faith of the plaintiffs could be impeached, evidence of Mack’s fraud was irrelevant and tended improperly to influence the minds of the jury. For the same reason, I think the evidence of the sale to Durfee & Co. and then by their consignee to the defendants, should have been excluded. It could only have been admissible after the plaintiffs’ title had been impeached by showing that they were not entitled to protection as purchasers in good faith. So, too, the declarations of Bloss, the agent of Mack, made on Saturday evening, after the shipping bills had been forwarded to the plaintiffs and the drafts had been accepted, were clearly inadmissible as evidence against the plaintiffs. Such evidence - *80 could have no legitimate bearing upon the case, and it is impossible to say what improper influence it may have exerted upon the minds of the jury.
If I am correct in the view I have taken of the legal principles involved in this case, it follows that the charge was erroneous in several particulars. There ivas no evidence whatever to warrant the jury in finding that Mack, whose conduct was certainly fraudulent enough to vitiate the whole transaction so far as he was concerned, was acting as the plaintiffs’ agent, or was doing business for them, or that the plaintiffs were personally concerned in, or had any knowledge of the fraud. And yet the jury were instructed that in either of these cases the plaintiffs could not acquire a good title to the property. The jury might well have understood from this part of the charge, that they were at liberty to find that the plaintiffs were parties to the fraud. Indeed in a subsequent part of the charge, after stating his opinion that the evidence of a participation in the fraud by the plaintiffs, or of their knowledge thereof, was at most very slight, the learned judge submits it to the decision of the jury as a question of fact. I think he should have told the jury that there was no evidence to sustain a verdict against the plaintiffs in that respect.
It was also erroneous to submit to the consideration of the jury, the evidence relating to the usage in respect to the transfer of shipping bills by delivery. It is true that the learned judge told the jury that he did not deem these questions so important, for, if Walker had power to sign the papers he delivered to Bloss, the plaintiffs were entitled to recover, unless they had notice of Mack’s fraud, or were not bona fide purchasers. But why submit the evidence on the subject of usage to the consideration of the jury at all ? Being submitted to their consideration, they had a right to infer that it ivas submitted for some purpose, and that it was their duty in some way to take it into account in making up their verdict.
A still more objectionable part of the eharge is that in which the learned judge instructs the jury that the fact of the papers being executed by a clerk, was a circumstance to put the plaintiffs *81 on inquiry, and might be considered on the question of good ■faith. It is true that the plaintiffs, when they made their advances upon the credit of these bills, took the risk of their genuineness. Had they been forged, or had they been executed in a manner not to make the act of the clerk the act of his princi-' pals, they, of course, would have acquired no title to the corn. But what was there in the fact that a clerk had signed the name of Niles & Wheeler, rather than one of the firm, that should put the plaintiff upon inquiry as to the honesty of the transaction 7 Is there any thing to furnish ground for suspicion in the fact that a clerk is employed to sign papers of this description? The question of the authority of the clerk to sign had already been properly presented to the jury. The principles applicable to that question had been well stated, and there the subject should have been left. To tell the jury after this, that though they should find that the clerk had authority, yet the mere fact of his signing the papers was a suspicious circumstance, calculated to awaken caution on the part of the plaintiffs, and calling upon them to inquire into the fairness of the transaction, could scarcely have failed to embarrass and mislead them.
[Albany General Term,
September 6, 1852,
Parker, Wright and Harris, Justices.]
The judgment must be reversed, and a new trial awarded, with costs to abide the event.